IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARIA L.,                                 §
                                          §
                Plaintiff,                §
                                          §
v.                                        §        No. 3:18-cv-160-BN
                                          §
NANCY A. BERRYHILL,                       §
Acting Commissioner of Social Security,   §
                                          §
                Defendant.                §

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Maria L. seeks judicial review of a final adverse decision of the
Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g). For the reasons
explained below, the hearing decision is reversed.

## Background

Plaintiff alleges that she is disabled as a result of depression, thyroid problems,
fibromyalgia, diabetes, and migraine headaches. *See* Administrative Record [Dkt.
No.16] ("Tr.") at 131, 142, 156, 168, 286. After her application for disability, disability
insurance benefits, and supplemental security income was denied initially and on
reconsideration, Plaintiff requested a hearing before an administrative law judge
("ALJ"). *See id.* at 181-192. That hearing was held on October 25, 2016. *See id.* at 99-
130. At the time of the hearing, Plaintiff was 50 years old. *See id.* at 106. Plaintiff had
attended up until tenth grade in high school, *see id.* at 108, and has not engaged in
substantial gainful activity since her onset date of March 25, 2008, *see id.* at 12.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 30. Although the medical evidence established that Plaintiff suffered from depression, bipolar disorder, anxiety, post-traumatic stress disorder, and fibromyalgia, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 18. The ALJ further determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that she has the ability to understand, carry out, and remember simple instructions; can concentrate in two-hour increments; should not work at a production rate pace but would meet all end of day goals, where interaction with co-workers and supervisors is incident to the work performed; requires occasional contact with the general public; and is capable of making simple decisions and can tolerate changes in the workplace setting. *See id.* at 21.

The ALJ determined that Plaintiff was unable to perform any past relevant work. *See id.* at 28. Relying on the vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a Retail Marker (DOT 209.587-034), a Laundry Folder (DOT 369.687-018), or a Ticket Printer and Tagger (DOT 652.685-094). *See id.* at 29.

Plaintiff appealed that decision to the Appeals Council, which affirmed the ALJ's ruling. *See id.* at 7-9.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on the general grounds that the ALJ erred by (1) improperly considering whether Plaintiff met a listing impairment, and (2) failing to properly evaluate the medical opinion evidence. *See* Dkt. No. 19 at 3-14.

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain

whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to

show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ

had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff contends that the ALJ erred by (1) improperly considering whether Plaintiff met a listing impairment and (2) failing to properly evaluate the medical opinion evidence. *See* Dkt. No. 19 at 3-14.

## I.  Listing Impairment

At Step Three of the evaluation process, the ALJ compares the claimant's impairments with impairments considered severe enough to disable an individual. *See Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). Often referred to as "the listings," the impairments are listed in Appendix 1 of the regulations. *See* 20 C.F.R. Part 404, Subpart P, app. 1. When an ALJ's Step Three determination is at issue, the reviewing court must (1) determine whether the ALJ supported the Step Three determination with a discussion of the relevant evidence and, if he failed to do so, (2) determine whether the ALJ's error was harmless. *See Cadzow v. Colvin*, No. 5:12-cv-225-C, 2013 WL 5585936, at *4 (N.D. Tex. Oct. 10, 2013) (citing *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007). An error is "harmless" when it does not compromise the ALJ's ultimate conclusion. *See id.* (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). But, if the uncontroverted evidence suggests that the claimant's impairments meet the

requirements of a listing, the ALJ's failure to provide the basis for his Step Three decision is error that requires remand. *See id.* (citing Audler, 501 F.3d 449).

Here, the ALJ held that "the severity of the [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [L]istings 12.04 and 12.06." Tr. at 18. Listing 12.04 relates to depressive disorder, bipolar disorders, and related disorders. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. To meet Listing 12.04, a claimant must establish evidence that satisfies Paragraphs A and B, or A and C.

Paragraph A is met when there is medical documentation of (1) a depressive disorder, characterized by five or more attributes from a list of depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, observable psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, or thoughts of death or suicide; or (2) a bipolar disorder, characterized by three or more attributes from a list of pressured speech, flight of ideas, inflated self-esteem, decreased need for sleep, distractability, involvements in activities that have a high probability of painful consequences that are not recognized, or an increase in goal-directed activity or psychomotor agitation. *See id.*

Paragraph B is met when there is an extreme limitation of one, or marked limitation of two areas, of mental functioning – namely the ability to (1) understand, remember, or apply information; (2) interact with other; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself. *See id.*

Paragraph C is met as to an individual's mental disorder where medically documented history evidences a "serious and persistent," disorder over a period of at least two years, in addition to evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the disorder and (2) marginal adjustment – that is, the individual has minimal capacity to adapt to changes in his or her environment or to demands that are not already part of his or her daily life. *See id.*

Since either Paragraph B or C would be necessary to meet the listing, the ALJ evaluated each in turn, *see* Tr. at 18-19, and found that Plaintiff "does not have any impairment or combination of impairments, which meets or equals any impairment or combination of impairments described in the Listings," *id.* at 20. He noted that an "extreme limitation is an inability to function in the area independently, appropriately, effectively, and on a sustained basis" and that a "marked limitation is a seriously limited ability to function in the area independently, appropriately, effectively, and on a sustained basis." *Id.* at 18-19.

As to the four areas of mental functioning in Paragraph B, first the ALJ assigned plaintiff a moderate limitation for understanding, remembering, and applying information based on a face-to-face interview with the Cooperative Disability Investigations ("CDI") Unit in January 2015 during which Plaintiff had no difficulty understanding, concentrating, talking, answering questions, or writing. *See id.* at 19. The ALJ noted that, during the interview, Plaintiff "reported that she could drive her child to school, manage finances in person or online, operate a motor vehicle, access the

internet from her smart phone to purchase items online, shop for groceries every week"
and was able to "recall[] and recit[e] from memory her social security number, date of
birth, place of birth and telephone number." *Id*. at 19.

Second, the ALJ assigned Plaintiff a mild limitation for interacting with others
based on Plaintiff's ability to understand and answer the Social Security
representatives' questions during the CDI interview in 2015 as well as treating
physician Dr. Kathryn Sickonez's assessment that Plaintiff was "capable of acting
appropriately with the general public." *Id*. at 19.

Third, as to concentrating, persisting, or maintaining pace, the ALJ assigned
Plaintiff a moderate limitation based on his findings from the CDI interview.

Finally, as to the ability to adapt or manage oneself, the ALJ assigned a
moderate limitation, citing the CDI interview and evidence that "examiners
consistently reported that [Plaintiff] was alert, oriented, and well groomed." *Id*.
(citations removed).

Accordingly, the ALJ found that, "because the [Plaintiff's] mental impairments
do not cause one extreme limitation or two marked limitations, the paragraph B [sic]
criteria [were] not satisfied." *Id*. at 20.

As to Paragraph C, the ALJ noted that Plaintiff "does not have a medically
documented history of chronic affective disorder or chronic organic mental disorder of
at least two years' duration that has caused more than a minimal limitation of ability
to do basic work activities." *Id*.

Because neither Paragraph B or C were met, and because "no State agency psychological consultant concluded that a mental listing [was] equaled," the ALJ held that Listing 12.04 had not been met or equaled. *Id.* at 18.

Plaintiff asserts that, as in *Loza v. Apful*, 219 F.3d 378, 390 (5th Cir. 2000), she, too, "can demonstrate that her impairments meet the requirements of Listing 12.04 and her substantial rights are therefore affected by the ALJ's failure to explain the basis of his step three determination." Dkt. No. 19 at 3.

While Plaintiff points to Dr. Fleming's and Dr. Sickonez's assessments, she fails to address how she has met all the criteria of the listing. Plaintiff has the burden of proof at Step Three of the sequential evaluation process. *See Greenspan*, 38 F.3d at 236. "A claimant does not meet a specific SSA listing if only some of those criteria are manifested." *Bowerman v. Astrue*, No. CIV.A. H-07-1925, 2008 WL 4104164, at *11 (S.D. Tex. Sept. 2, 2008); *see also* SSR 83-19, Dep't of Health and Human Servs. Ruling 90 (Jan.1983) ("An impairment 'meets' a listed condition only when it manifests the specific findings described in the set of medical criteria for that listed impairment.").

Moreover, the ALJ's reliance on the CDI report falls within his discretion – an ALJ has broad discretion to determine medical experts' credibility and weigh their opinions. *See Greenspan*, 38 F.3d at 237. And the criteria for the listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). Concluding that the ALJ's findings were not supported by substantial evidence would be "appropriate only if no credible evidentiary choices or medical findings supported

the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir.2001) (internal quotation marks omitted).

Based on the evidence that the ALJ cited, the ALJ's determination that Plaintiff did not meet a listing is supported by substantial evidence, and this Court may not reweigh the evidence or substitute its judgment for the Commissioner's. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

Accordingly, Plaintiff has not established that the ALJ's Step Three review requires remand.

## II.   Evaluation of Medial Opinion Evidence

As to her the claim that the ALJ erred by failing to properly evaluate the medical opinion evidence, *see* Dkt. No. 19 at 3-14,[1] Plaintiff asserts that the ALJ did "not give Dr. Sickonez's opinion any weight" based on the fact that he did not expressly state the exact degree of weight that he gave Dr. Sickonez, *id.* at 8.

On October 17, 2016, Dr. Sickonez completed an evaluation of Plaintiff giving Plaintiff a score of three (deemed a substantial loss of ability to perform the named activity) for the following attributes: the ability to apply common sense understanding to carry out simple one- or two-step instructions; the ability to demonstrate reliability

---

[1] On January 18, 2017, the Administration amended the regulations concerning opinion evidence. *See* 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017). These revisions include changes to the categories of opinion evidence. *See* 20 C.F.R. §§ 404.1502, 416.902 (2017). The Administration also revised the criteria for evaluation opinion evidence, deferring to Section 404.1520 (as opposed to Section 404.1527) for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2017). In this case, Plaintiff filed her applications before the effective date and, therefore, the pre-2017 regulations apply.

by maintaining regular attendance and being punctual within customary tolerances; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to maintain personal appearance; the ability to respond appropriately to changes in a routine work setting; and the ability to cope with normal work stress. Further, Dr Sickonez gave Plaintiff a score of four (deemed an extreme loss of ability to perform the named activity) for the following attributes: the ability to apply common sense understanding to carry out detailed but involved written or oral instructions; the ability to maintain concentration for an extended period of two hours; the ability to perform at a consistent pace without an unreasonable number and length of rest period or breaks; the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; the ability to behave in an emotionally stable manner; and the ability to finish a normal work week without interruption from psychological based symptoms. *See* Tr. at 566-67.

The ALJ noted these findings in his report:

Dr. Sickonez, a treating psychiatrist at MetroCare opined that the claimants exhibits substantial loss of ability to apply common sense understanding to carry out simple one or two-step instructions, ask simple questions, accept instructions, respond appropriately to criticism from superiors, maintain personal appearance; and responsd appropriately to a change in a routine work settings. However, [Plaintiff] has extreme loss of ability to carry out detailed but uninvolved written or oral instructions, maintain concentration for an extended period (being two hours), behave in an emotionally stable manner, and finish a normal work week without interruption from psychologically based symptoms. Dr. Sickonez also opined that the claimant would be absent from more than four days a month.

12

Tr. at 27.

Despite taking into account the exact data from the evaluation report, the ALJ noted that "Dr. Sickonez's assessments [were] not supported by the medical evidence (including [her] own reports) and [was] not consistent with other substantial evidence in the record," specifically that Plaintiff reported "that she could drive her child to school, manage her finances in person or online, operate a motor vehicle, access the internet from her smart phone to purchase items online, shop for groceries every week, and she recall[] and recite[] from memory her social security number, date of birth, place of birth and telephone number," in addition to being able to "read a sentence without error," and "sign her name." *Id.*

A comparison between the check-the-box evaluation and all other MetroCare reports evidence the discrepancies that the ALJ found. As Defendant argues, in a written report made the very same day that the check-the-box evaluation was made, Dr. Sickonez found Plaintiff to have organized thoughts, normal attention, fair insight, fair judgment, to not be a risk to herself or others, to be adequately groomed, and not show signs of psychotic features. *See* Tr. at 876-77. These findings are echoed in previous reports that Dr. Sickonez authored on August 23, 2016, and June 28, 2016.

Because of these discrepancies, the ALJ noted that:

If the treating source opinion of severity of impairment is well supported by medical evidence, it is given controlling weight. Further, we must accord substantial weight to the opinion of the claimant's treating physician unless good cause is shown. In this case, Dr. Sickonez's assessments are not supported by the medical evidence (including [her] own reports).... Nonetheless, I incorporated Dr. Sickonez's findings that are supported by the medical evidence of record.

*Id.*

As the ALJ indicated, while the opinions of a Plaintiff's treating physicians are entitled to "great weight," the ALJ can decrease reliance on treating physician testimony for good cause. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (quoting *Greenspan*, 38 F.3d at 237). "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" *Id.* at 566. Moreover, the Fifth Circuit has held that "the general rule [of granting weight to a treating physician] ceases to apply ... when a treating physician's testimony is 'brief or conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.'" *Foster v. Astrue*, 410 F. App'x 831, 832-33 (5th Cir. 2011) (quoting *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005)).

But, if "controlling weight" is not given to a treating physician's medical opinions, Section 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000). Specifically, the ALJ must consider:

> (1) the physician's length of treatment of the claimant;
> (2) the physician's frequency of examination;
> (3) the nature and extent of the treatment relationship;
> (4) the support of the physician's opinion afforded by the medical evidence of record;
> (5) the consistency of the opinion with the record as a whole;

(6) and the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-cv-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in decisions construing Newton, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir.2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

The ALJ did not undergo the detailed analysis of the Section 404.1527(c) factors before declining to give weight to the opinions of Dr. Sickonez, as one of Plaintiff's treating specialists, *see Newton*, 209 F.3d at 456, but reversal is only warranted if the claimant shows that she was prejudiced by the ALJ's error. Defendant urges that the Section 404.1527(c) factors do not apply to check-the-box questionnaires, relying on

*Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). But the unpublished *Foster* decision did not address Section 404.1527(c) or its factors at all, and the Fifth Circuit's prior case law suggests that an ALJ cannot forego an otherwise required analysis of the factors simply by invoking a good cause exception. *See Qualls*, 339 F. App'x at 465-67.

More recently, the Fifth Circuit in *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017), following *Newton*, emphasized the importance of an ALJ's comporting with proper legal standards and giving a proper explanation of the weight afforded a treating or examining physician's opinion. And—most importantly here—the *Kneeland* court noted that, where "such reasoning is not present in the ALJ's decision, which is what this Court reviews," the Court cannot affirm on the basis of Defendant's argument, and that "it should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion." *Id.* at 761 (footnotes omitted). So it is here, where the ALJ did not point Dr. Sickonez's completing a check-the-box questionnaire as the basis for giving his opinion little weight and did not fully explain, through analysis of the required factors, what weight he gave to Dr. Sickolez's opinions or why. *See* Tr. at 24-27. And the Court "'may affirm only on the grounds that the Commissioner stated for his decision.'" *Kneeland*, 850 F.3d at 761 n.59 (quoting *Copeland*, 771 F.3d at 923).

Here, where the ALJ might have reached a different decision as to the RFC if he had given Dr. Sickonez's opinion greater weight after properly considering the

Section 404.1527 factors, and where the ALJ did not give full weight to – and follow – the medical opinions of other physicians or providers who had treated or examined Plaintiff, *compare Qualls*, 339 F. App'x at 466-67, *with* Tr. at 24-27 (giving the four State Agency medical consultants' opinions "less than significant weight" and giving only "partial weight" to the opinions or assessments of Dr. Fleming and Mr. Hayes and, as with Dr. Sickonez's findings, explaining only that the ALJ "incorporated Dr. Fleming's findings that are supported by the medical evidence of record"), prejudice is established here, *see Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Newton*, 209 F.3d at 458; *Ripley*, 67 F.3d at 557).

Accordingly, for all of these reasons, the ALJ's decision will be reversed.[2]

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: March 21, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

[2] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled. *Accord Kneeland*, 850 F.3d at 761-62.